IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ELGIN HILLIARD, SR.

    Plaintiff,

v.                                                            CASE NO.

RENE GUTIERREZ

    Defendant.

_____

## COMPLAINT

Plaintiff, ELGIN HILLIARD, SR. ("Plaintiff" or "Hilliard"), by and through his undersigned counsel, files this Complaint for False Arrest/Imprisonment, First Amendment Retaliation, and for Violations of the Fourth Amendment, against Defendant, RENE GUTIERREZ, ("Defendant" or "Gutierrez"), and in support thereof states as follows:

### Jurisdiction and Venue

1. This action is brought pursuant to 42 U.S.C. §§1983, 1988, the First, Fourth, and Fourteenth Amendments to the United States Constitution and the tort laws of Florida in excess of $30,000.00.

2. Venue is proper because the parties reside, or are located, within the state of Florida and, specifically, within Miami-Dade County, Florida. Furthermore, the acts giving rise to this action occurred in the City of Hialeah, Florida.

3. In connection with the acts alleged below, Defendant Rene Gutierrez (hereinafter, "Gutierrez"), violated common law duties he owed to Plaintiff.

4. All conditions precedent under Florida law for the filing of state law claims have been satisfied.

1

**Parties**

5. Plaintiff Elgin Hilliard, Sr. (hereinafter "Hilliard") at all times material hereto, has been a resident of Miami-Dade County, Florida, over the age of eighteen years and otherwise able to sue in his own capacity.

6. Defendant Rene Gutierrez is a duly appointed law enforcement officer by the State of Florida who, upon information and belief, at all times relevant to this action, was acting under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the Hialeah Housing Authority, and/or the State of Florida. Defendant is being sued in his individual capacity.

7. At all material times, Defendant was engaged in unconstitutional and illegal activity that was the proximate cause of the violations of Plaintiff's federally protected rights and the damages suffered therefrom.

**General Allegations of Fact**

8. Defendant violated Plaintiff's constitutional rights as well as the laws of Florida. It is further alleged these violations were committed as a result of malice, recklessness, deliberate indifference, and/or plain incompetence of Defendant.

9. In 2015, Hilliard, became disabled after a work accident and was often using a cane for assistance with walking.

10. In 2014, Hilliard had applied for Section 8 housing benefits with the Hialeah Housing Authority ("HHA") and on or about May 17, 2016, his case manager called him and asked him to return to the HHA office to provide some additional documentation.

11. Hilliard, using his cane to walk, arrived at the HHA office with his documentation later that day.

12. Hilliard waited in the lobby while his case manager reviewed his documentation, but

2

after about 15 minutes he decided to step outside to stretch.

13. A few minutes later, Hilliard came back inside the lobby and soon thereafter a verbal dispute ensued between him and one of the three or four HHA front desk workers who were present regarding the lobby television and Hilliard's belief the was being discriminated against.

14. Eventually, Hilliard requested a complaint form to submit a formal complaint of discrimination.

15. As Hilliard was sitting in the HHA waiting area, calmly and quietly filling out the discrimination report, Defendant, approached Hilliard and instructed him step outside.

16. Hilliard complied with Defendant's request, walked outside with Defendant, using the cane to walk.

17. Hilliard asked Defendant what the problem was, and Defendant replied by accusing Hilliard of being drunk and smoking marijuana, neither of which were true.

18. Hilliard never raised his voice, acted in a threatening manner, or did anything else to give Defendant any reason to think Hilliard was breaking, or would be breaking, any laws.

19. Once outside, Hilliard again asked Defendant what the problem was. Defendant replied by saying he felt threatened by Hilliard holding his cane in his hand; therefore, Hilliard placed his cane on the side of the building structure and placed his HHA complaint paperwork on the ground so Defendant could see he had nothing in his hands.

20. Hilliard's hands were now empty with no objects in them and he further placed both of his hands behind his back and stood in a non-threatening manner to finish his conversation with Defendant.

21. According to the Hialeah Police report, Defendant decided Hilliard was taking a threatening stance, and told Hilliard he was "squaring off against" him.

22. Hilliard again began asking Defendant what the problem was, at which point

Defendant started to reach towards his hip, causing Hilliard to believe Defendant may be reaching for his gun or Taser.

23. However, instead of brandishing his firearm or Taser, Defendant changed his focus to another patron, a Black woman parked in a nearby space, asking her if she and Hilliard were together and if the vehicle belonged to Hilliard.

24. Hilliard told Defendant he thought Defendant was harassing the woman (who was not with him and who Hilliard had never met) at which point Defendant told Hilliard to put his hands on the wall and that he was under arrest.

25. Hilliard yet again complied, even though he knew he had done nothing wrong.

26. As Defendant placed Hilliard's hand behind his back and into handcuffs.

27. Assuming *arguendo* Hilliard had been free to leave Defendant's presence earlier, he certainly could not do so now.

28. At that point, according to the sworn Hialeah Police Department report detailing statements made to police officers by Defendant, Defendant pulled his Taser and aimed it at Hilliard.

29. Approximately six (6) to eight (8) Hialeah Police officers shortly arrived on scene; however, as Hilliard was complying, it took only one officer to take custody of Hilliard, place a second set of handcuffs on him, and place him in a squad car.

30. From the squad car, Hilliard watched and listened as the newly arrived Hialeah Police officers questioned Defendant and HHA front desk employee(s).

31. Hilliard was never questioned, nor was the woman in her car who witnessed the entire event.

32. While Hilliard was sitting in the back of the squad car, Defendant stood by the back window where. Hilliard was sitting and continued to harass and threaten him.

33. Despite Defendant knowing his accusations and assumptions were unfounded, Hilliard was placed under arrest for assault on an officer and disorderly conduct and was also trespassed from HHA property.

34. From the time Defendant requested he step outside Hilliard was not "free to go" and was unlawfully detained by Defendant.

35. On or about March 4, 2020, Defendant testified under oath to the following in a federal jury trial:

> a. at no time did Defendant see Hilliard acting violent or threatening towards HHA employees while he was inside the building, in fact, when Defendant first saw Hilliard, Hilliard was sitting quietly and completing the complaint paperwork;
>
> b. at no time did he see Hilliard behaving as if he was intoxicated or under the influence of substances;
>
> c. at no time did Hilliard swing his cane at Defendant or move in any threatening manner towards him.

36. Hilliard was in police custody for approximately 16 hours as a result of this incident: approximately 1.5 hours riding in the police car and approximately 14.5 hours in jail, during which he spent the night sleeping on a hard bunk, having to climb up and down off of it for headcounts until he was bonded out by his family.

37. The impact of the actions of the Hialeah Housing Authority, Defendant, and the Hialeah Police Department on Hilliard have been significant, to say the least. On June 16, 2016 at 9:00 am, Hilliard, who has no other criminal record, was arraigned on felony charges of aggravated assault on a law enforcement officer.

38. However, the Miami-Dade State Attorney's Office informed the court on that date that it was declining to file an information against Hilliard for the aggravated assault on a police officer

due to there being "insufficient evidence" to file formal charges, but filed the disorderly conduct charges in county court.

39. Accordingly, on July 13, 2016 at 9:00 am, Hilliard was arraigned on misdemeanor charges of breach of the peace and, once again, after reviewing the video recording, those charges were summarily dismissed.

40. However, on or about July 14, 2016, the State Attorney filed a nolle prose in the disorderly conduct case as well.

41. As a direct and proximate result of his wrongful arrest, Hilliard suffered, and continues to suffer, substantial aggravations and exacerbations of his painful arthritis and depression.

42. To the extent Defendant was able to, and/or did, understand that his arrest of Hilliard violated clearly established civil rights held by Hilliard, Defendant's actions were guided by the knowledge that he could do so with impunity, and without fear of discipline, oversight, meaningful review and/or scrutiny by HHA.

43. Defendant very plainly, and under the color of law, falsely detained and arrested Mr. Hilliard.

44. Hilliard has also suffered an increase in his arthritic pain due to the arrest. His pain medication has been increased three times since the arrest.

45. Additionally, Hilliard feels less safe in general since the date of the incident. His ability simply to go about his daily life with the sane peace of mind he enjoyed prior to this incident no longer exists.

46. Moreover, Defendant violated Hilliard's constitutionally right to be free from unreasonable seizure, ridiculed him, put him in fear for his safety, even his life, and did so in open public.

47. Since the incident, Hilliard has needed to avail himself of increased psychological

and/or psychiatric help, to address the damage caused by Defendant's false arrest and both Defendant's blatant abuse of authority.

48. Finally, because Hilliard was wrongfully arrested, his car was towed from the HHA lot, where it was legally parked in a handicapped space at the time of his arrest.

49. Pursuant to §768.28, Florida Statutes, Plaintiff notified Defendant of his claims prior to filing this action and said claims were not resolved.

50. Plaintiff has retained the Goodwin Firm to represent him in this matter and has agreed to pay a reasonable fee for this representation.

## COUNT I
## FALSE ARREST AND/OR IMPRISONMENT

51. Plaintiffs hereby incorporate paragraphs 1- 53 above as if specifically set forth herein.

52. On or about May 17, 2016, Defendant did unlawfully detain and/or seize Elgin Hilliard, Sr. by unlawfully restraining his movement and freedom while acting under the color of law.

53. The unlawful arrest of Hilliard was the result of the plain incompetence of Defendant while acting within the course and scope of his employment, and pursuant to the discretionary authority vested in him by the State of Florida.

54. As specifically set forth above the illegal arrest and false imprisonment stem from actions by Defendant which were malicious, taken in bad faith, and/or with willful disregard for Hilliard's rights and well-being.

55. As a direct and proximate cause of the illegal detention, and Hilliard's attempt to avoid same, he suffered financial loss in the form of attorney's fees, bail and other costs, loss of freedom by incarceration, physical injury by electrical shock, embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, stress, anxiety, and

depression.

**WHEREFORE**, Plaintiff, ELGIN HILLIARD, SR., requests this Court enter judgment against Defendant, RENE GUTIERREZ, and award Plaintiff compensatory damages, attorneys' fees, and costs, as well as all other further relief this Court deems just and proper.

## COUNT II
### 42 U.S.C. §1983 FIRST AND FOURTEENTH AMENDMENT VIOLATIONS FOR RETALIATION

56. Plaintiff incorporates paragraphs 1-53 above, as if specifically set forth herein.

57. While Defendant was acting under color of law as a law enforcement officer in the state of Florida and in the employment of HHA, he deprived Hilliard of rights secured to him under the First Amendment to the United States Constitution.

58. Defendant unlawfully and without probable cause detained/arrested Plaintiff. Such actions by Defendant were taken in retaliation for Plaintiff's lawful exercise of his rights under the First Amendment when he spoke to Defendant and HHA employees and he retaliated by falsely arresting Hilliard.

59. The conduct of Defendant violated Plaintiff's clearly established right to free speech as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States and for which 42 U.S.C. § 1983 provides a remedy.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages (b) Plaintiff's costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and (c) such other and further relief as this Court deems necessary and proper.

## COUNT III
### 42 U.S.C. §1983 FOURTH AND FOURTEENTH AMENDMENT VIOLATIONS

60. Plaintiff incorporates paragraphs 1-53 above, as if specifically set forth herein.

61. While Defendant was acting under color of law as a law enforcement officer in the

State of Florida and in the employment of HHA, he deprived Hilliard of rights secured to him under the Fourth Amendment to the United States Constitution.

62. Defendant unlawfully and without probable cause detained/arrested Plaintiff.

63. The conduct of Defendant violated Plaintiff's clearly established right to be free from unlawful seizure guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and for which 42 U.S.C. § 1983 provides a remedy.

WHEREFORE, Plaintiff respectfully requests this Court to award (a) reasonable and appropriate compensatory damages (b) Plaintiff's costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and (c) such other and further relief as this Court deems necessary and proper.

### Trial by Jury

64. Plaintiff demands trial by jury for all issues so triable by right.

Dated this 17th day of May 2020.

*April S. Goodwin*
APRIL S. GOODWIN, ESQ.
Florida Bar No. 0502537 The
Goodwin Firm
801 West Bay Dr., Suite 705
Largo, FL 33770
(727) 316-5333
april@goodwin-firm.com
Attorney for Plaintiff